**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**GERARD BARSOUM,**

***Plaintiff,***

**v.**

**KINDERHOOK INDUSTRIES, LLC, AMN HEALTHCARE SERVICES, INC., and DAVID FETTEROLF,**

***Defendants.***

**CIVIL ACTION NO. 1:23-cv-10928**

# AMENDED COMPLAINT

## *Introduction*

1. Plaintiff brings this lawsuit in order to obtain the fair and promised value of his ownership interest in Stratus Video.
2. Plaintiff was wrongfully deprived of such ownership interest through the actions of Defendants, which are delineated herein, and which include, but are not limited to, misrepresentation, breach of contract, and violations of other common and statutory law.
3. As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined.

## *Jurisdiction and Venue*

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332.
5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because each of the Defendants may be found in this District given their actions related to Plaintiff's claims and a substantial number of the events at issue occurred in this District.
6. Personal jurisdiction over all Defendants exists in this District as a result of Defendants' extensive contacts with the Commonwealth of Massachusetts, as further alleged below.

***Parties***

7. Plaintiff Gerard Barsoum ("Plaintiff") is an individual residing in Middlesex County at 14 Sandrick Road, Belmont, Massachusetts, 02478.
8. Defendant Kinderhook Industries, LLC ("Kinderhook"), is a duly organized limited liability company engaged in the business of private equity investment with a usual place of business at 505 5th Avenue, New York, New York, 10017.
9. Defendant AMN Healthcare Services, Inc., is a duly organized national corporation engaged in the business of healthcare services with a usual place of business at 8840 Cypress Waters Boulevard, Suite 300, Dallas, Texas, 75019 ("AMN").
10. Defendant David Fetterolf is an individual with a usual place of business at 667 Madison Avenue, New York, New York, 10065.

***Facts***

11. During the year 2020, Defendants Kinderhook, AMN, and Fetterolf, through misrepresentation, breach of contract, and/or violation of other common and statutory law, wrongfully and unlawfully deprived Plaintiff of the fair and promised value of his ownership interest in the entity Stratus Video ("Stratus").

12. At all times pertinent hereto, Plaintiff was an employee of Stratus, an entity having a usual place of business in Clearwater, Florida, which was engaged in the business of providing language services for healthcare providers.

13. Defendant Kinderhook acquired Stratus during calendar year 2015.

14. On or about January 29, 2020, Defendant AMN publicly announced its agreement to acquire Stratus from Defendant Kinderhook for a sale price of approximately $475 million. The sale successfully closed on or about March 9, 2020.

15. Prior to the acquisition of Stratus by Defendant AMN on or about March 9, 2020, Defendant Fetterolf was the President of Stratus dating back to at least calendar year 2018. In that role, Defendant Fetterolf wielded supervisory authority over Plaintiff and acted as the agent of Stratus and its owners.

16. From 2015 until March 9, 2020, Defendant Kinderhook owned and was responsible for all actions of Stratus and its representatives.

17. Throughout the time period that Defendant Kinderhook owned Stratus, it oversaw and had either legal or effective control of the decisions and operations of Stratus and its management.

18. During its ownership term of Stratus, Defendant Kinderhook closed two add-on acquisitions with the buys of: InDemand Interpreting, a Seattle-based provider of video and audio interpretation services, in May 2019; and Optimal Phone Interpreters, a Winter Park, Florida-based provider of over-the-phone interpretation and document translation services, in January 2016. Defendant Kinderhook funded these acquisitions and folded both companies into Stratus while it owned Stratus.

19. During some or all of the time period that Defendant Kinderhook owned Stratus, Maureen Hubor served as Chief Financial Officer of Stratus. Defendant Kinderhook placed her in that position with Stratus. Ms. Hubor routinely worked and communicated with Defendant Kinderhook regarding decisions affecting Stratus while Defendant Kinderhook owned the company.

20. During the time period that Defendant Kinderhook owned Stratus, Stratus had numerous clients in Massachusetts.

21. Plaintiff managed Stratus' relationship with numerous clients in Massachusetts during the time period that Defendant Kinderhook owned Stratus. Among the clients that Stratus had in Massachusetts during the time period that Defendant Kinderhook owned Stratus were: UMass Memorial Health; Steward Health; Southcoast Hospitals Group; Southcoast Physicians Group; Baystate Health; Signature Healthcare Brockton; Berkshire Health System; Cape Cod Healthcare; Beth Israel Deaconess Medical Center; and Shriners Hospital For Children.

22. On or about March 9, 2020, Defendant Kinderhook sold Stratus to Defendant AMN for $475 million. Through this purchase, Defendant AMN acquired all of the operations and assets of Stratus. Defendant AMN effectively continued the business operations of Stratus that existed prior to Defendant AMN's purchase, including continuing to employ Plaintiff. After the purchase of Stratus by Defendant AMN, Plaintiff became an employee of Stratus.

23. Defendant AMN is the successor in interest to Stratus and Defendant Kinderhook, having acquired Stratus and all interest therein on or about March 9, 2020.

24. Maureen Hubor, who was the Chief Financial Officer of Stratus while it was owned by Defendant Kinderhook and before it was sold to Defendant AMN, became President of Defendant AMN's language services division after Stratus was acquired by Defendant AMN. Defendant AMN's language services division is what Stratus became after the acquisition by Defendant AMN. Prior to the acquisition, Defendant AMN did not have a language services division or similar services.

25. On or about October 30, 2015, a date subsequent to Defendant Kinderhook's acquisition of Stratus, Plaintiff entered into an agreement with Stratus for the issuance of certain equity interests in Stratus (hereinafter referred to as the "Equity Agreement").

26. Pursuant to the Equity Agreement, Plaintiff was granted an ownership interest in Stratus through the provision by Stratus of specific amounts of certain shares of various equity units to Plaintiff.

27. The Equity Agreement also provided that a significant portion of Plaintiff's ownership interest would be rendered forfeit in the event that Plaintiff's employment with Stratus terminated for any reason.

28. Plaintiff was significantly undercompensated with respect to the value of his services for the duration of his term of employment by Stratus, as compared to alternative employment available to Plaintiff at the time.

29. The promise of receiving fair compensation for Plaintiff's sizeable equity interest in Stratus granted under the Equity Agreement was the primary incentive and motivation for Plaintiff continuing his employment arrangement with Stratus.

30. Plaintiff provided valuable services to Stratus, performing all duties that were reasonably expected of him.

31. On multiple occasions prior to March 2020, Plaintiff raised concerns regarding his compensation to both Stratus and Defendant Fetterolf.

32. Stratus, though Defendant Fetterolf, responded to Plaintiff's concerns about his compensation by assuring Plaintiff that he would earn significant additional compensation as a result of the Equity Agreement when Stratus was eventually sold.

33. Stratus' and Defendant Fetterolf's statements were made to Plaintiff while Stratus was owned by Defendant Kinderhook, and such statements were made for the benefit of Defendant Kinderhook as well as Stratus.

34. Both Stratus and Defendant Kinderhook benefitted at that time from those representations by convincing Plaintiff, on that basis and for those reasons, to remain employed by Stratus.

35. From 2015 through 2020, Stratus and Defendant Fetterolf, as representatives of Defendant Kinderhook, made numerous specific and implied promises to Plaintiff regarding the value of Plaintiff's ownership interest under the Equity Agreement. These promises were made for the purpose of inducing Plaintiff's continued provision of valuable services to Stratus. These promises and representations were made to Plaintiff while he was a resident of Massachusetts, and were made on behalf and for the benefit of Stratus, Defendant Fetterolf and Defendant Kinderhook, each of whom benefited from Plaintiff's continued employment with Stratus.

36. The promises and representations made to Plaintiff by Stratus and Defendant Fetterolf, as representatives of Defendant Kinderhook, include, but are not limited to, the following:

   a. Assurance by Stratus CFO Maureen Huber in October 2015, immediately prior to and as inducement for Plaintiff's signing of the Equity Agreement, that the shares granted in that Agreement constituted a 0.5% ownership interest in Stratus;

   b. Written assurance by Defendant Fetterolf in August 2018 that Plaintiff's ownership shares in Stratus under the Equity Agreement, after accounting for dilution, amounted at that time to an interest of between 0.36% and 0.39%;

   c. Verbal promise by Defendant Fetterolf in June 2019 that, although Plaintiff's ownership interest had been diluted from 0.5% to 0.31%, his interest continued to carry a value that would equate to a payout of Six Hundred Ninety-Six Thousand Dollars ($696,000.00) in the event that Stratus were acquired at a sale price of $400 million;

   d. Confirmation of the terms stated by Defendant Fetterolf in June 2019, by way of a July 5, 2019, email sent by Plaintiff to Defendant Fetterolf which invited Defendant Fetterolf to "correct anything I've misunderstood" (in response to which no correction was received); and

   e. Additional assurances over the years by Defendant Fetterolf and Stratus Vice President Jenny Esno that Plaintiff's ".5% interest," even after inevitable dilution, would net him close to one million dollars upon the sale of Stratus Video and would, itself, enable Plaintiff "to afford a dream house."

37. Plaintiff reasonably relied on these many repeated and consistent promises.

38. On or about February 14, 2020, after the public announcement of Defendant AMN's intended acquisition of Stratus for the sale price of $475 million, Defendant Fetterolf informed Plaintiff of the following:

a. Contrary to the assurances made over the past four and a half years regarding Plaintiff's 0.5% ownership of the company, Plaintiff's initial interest pursuant to the Equity Agreement represented only a 0.13% ownership interest in Stratus; and

b. Such ownership interest had since been diluted to an ownership share of an approximately 0.075% equity in Stratus.

39. As a result of the sale of Stratus to Defendant AMN, Plaintiff received approximately Two Hundred Fourteen Thousand Seven Hundred Fifty-Nine Dollars ($214,759.00) in exchange for his equity interest in Stratus pursuant to the acquisition of the company.

40. According to the Schedule K-1 tax form issued to Plaintiff with regard to that payment, Defendants attributed that payment to Plaintiffs' ownership interest in Stratus. Stratus, at all times relevant to that payment, was owned in full first by Defendant Kinderhook and then by Defendant AMN.

41. Upon information and belief, if Plaintiff had received payment for the full 0.5% interest in Stratus that he had been repeatedly and specifically promised – as opposed to the 0.13% interest that Defendant Fetterolf, as of February 14, 2020, represented to be Plaintiff's share – then Plaintiff would have, and should have, received at least a sum of approximately Eight Hundred Eighty-Seven, Six Hundred Seventy Dollars ($887,670.00) in exchange for his equity interest in Stratus.

42. This payment of $887,670.00 for a purchase price of $475 million is roughly comparable to the payment of $696,000.00 that Defendant Fetterolf represented that Plaintiff would receive in the event of an acquisition for a sale price of $400 million.

43. Defendants Kinderhook, AMN, and Fetterolf were notified in writing of Plaintiff's potential claims on or before December 5, 2022.

44. Defendant Kinderhook is responsible for the actions taken by Stratus during the period when Stratus was owned by Defendant Kinderhook.

45. Defendant AMN, as the successor in interest to Stratus, is responsible for the actions taken by Stratus.

46. Defendant Fetterolf is liable to Plaintiff in his individual capacity due to circumstances including, but not limited to, Defendant Fetterolf's participation in the tortious acts alleged above.

47. At all times pertinent to the allegations in this Complaint, Plaintiff was a resident of the Commonwealth of Massachusetts, conducted the majority of his work as an employee of Stratus within Massachusetts, and received compensation for his services and equity ownership in Massachusetts.

48. Plaintiff worked as an employee of Stratus and as an employee of Defendant AMN in Massachusetts. The statements, representations, contractual undertakings and payments set forth above were all directed to Plaintiff as an employee residing in Massachusetts, and were made on behalf of and for the benefit of all Defendants.

## COUNT I –MISREPRESENTATION

49. Plaintiff repeats the allegations set forth in paragraphs one through forty-eight and by reference makes them a part of this Count I.

50. Defendants Fetterolf and Kinderhook falsely represented to Plaintiff that the Equity Agreement afforded Plaintiff a 0.5% equity interest in Stratus in order to induce Plaintiff's continued employment on behalf of these Defendants.

51. Said Defendants either knowingly, and thus fraudulently, or negligently made these incorrect representations to Plaintiff.

52. Said Defendants knew, or should have known, that these representations were false.

53. Said Defendants had a duty to determine and thereafter represent this information accurately to Plaintiff but failed to do so.

54. Plaintiff relied upon Defendants' false representations to his detriment from October 30, 2015, through February 14, 2020.

55. Defendant AMN is liable for these events as successor to Stratus.

56. Plaintiff sustained monetary damages as a direct and proximate result of his reliance on Defendants' fraudulent and/or negligent misrepresentations.

## <u>COUNT II – BREACH OF CONTRACT</u>

57. Plaintiff repeats the allegations set forth in paragraphs one through fifty-six and by reference makes them a part of this Count II.

58. The Equity Agreement constitutes a binding and enforceable contract.

59. Plaintiff fulfilled the terms and conditions required of him pursuant to the Equity Agreement.

60. Pursuant to the terms of the Equity Agreement, at the time of the sale of Stratus from Defendant Kinderhook to Defendant AMN, Defendants were obliged to provide Plaintiff with fair value equivalent to 0.5% of the equity of Stratus, less dilution since October 30, 2015.

61. Defendants failed to provide Plaintiff with compensation equivalent to a 0.5% equity interest in Stratus, less dilution, and therefore are in breach of the Equity Agreement.

62. With regard to the breach of the Equity Agreement, each Defendant is liable directly for its actions, or each Defendant is liable as a successor to Stratus, or each Defendant is liable vicariously through its relationship with Stratus.

63. Plaintiff sustained monetary damages as a direct and proximate result of Defendants' breach.

**COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

64. Plaintiff repeats the allegations set forth in paragraphs one through sixty-three and by reference makes them a part of this Count III.

65. A covenant of good faith and fair dealing is implicit in the Equity Agreement.

66. Plaintiff reasonably expected to receive the fruits of the Equity Agreement which were promised to him by Defendants.

67. In failing to provide Plaintiff with the fair value of his 0.5% equity interest in Stratus, less dilution, Defendants wrongfully deprived the Plaintiff of his reasonable expectations of money fairly earned and legitimately expected, and thereby breached the covenant of good faith and fair dealing.

68. With regard to the breach of the implied covenant, each Defendant is liable directly for its actions, or each Defendant is liable as a successor to Stratus, or each Defendant is liable vicariously through its relationship with Stratus.

69. Plaintiff sustained monetary damages as a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing.

## COUNT IV – DETRIMENTAL RELIANCE

70. Plaintiff repeats the allegations set forth in paragraphs one through sixty-nine and by reference makes them a part of this Count IV.

71. On numerous occasions, Defendants promised Plaintiff, both specifically and implicitly, that Plaintiff's continued employment afforded him a 0.5% ownership interest in Stratus, and would entitle Plaintiff to receive nearly one million dollars upon the sale of that company.

72. Defendants expected, or reasonably should have expected, Plaintiff to rely upon the promised value of his equity ownership.

73. Plaintiff did, in fact, rely on Defendants' promises regarding the value of his alleged 0.5% ownership interest in choosing to continue providing his valuable services to Defendants as an employee of Stratus for several years.

74. Injustice can only be avoided by enforcement of the promise made to Plaintiff by Defendants.

75. Each Defendant is liable either directly for its actions, or each Defendant is liable as a successor to Stratus, or each Defendant is liable vicariously through its relationship with Stratus.

76. Plaintiff sustained monetary damages as a direct and proximate result of his detrimental reliance on Defendants' false promises.

**COUNT V – UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A, §11**

77. Plaintiff repeats the allegations set forth in paragraphs one through seventy-six and by reference makes them a part of this Count V.
78. The conduct alleged above wrongfully and knowingly, and was intended to, deprive Plaintiff of the value of the Equity Agreement, in contradiction of the obligations owed to Plaintiff under the Equity Agreement.
79. Pursuant to the K-1 tax form issued by, or on behalf of, one or more Defendants, Plaintiff's interest under the Equity Agreement concerned a partner or other owner's ownership interest in Stratus. The money owed to Plaintiff under that agreement represents a business obligation undertaken by Defendants.
80. Defendants' conduct was "in disregard of known contractual arrangements" and intended to secure benefits for the Defendants, thereby constituting an "unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc. v. HBC Assocs*., 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991).
81. Defendants knowingly and willfully breached the contract and engaged in the unfair acts and practices set forth above.
82. Defendants are, therefore, liable for the losses incurred by Plaintiff and for the attorneys' fees and costs incurred by Plaintiff in this matter.

83. The conduct at issue occurred in a business relationship governed by Section 11 of General Laws Chapter 93A and, therefore, no demand letter prior to suit is required. However, a demand letter, as that term is understood for purposes of Section 9 of General Laws Chapter 93A, was issued to all Defendants more than sixty (60) days prior to filing the instant action.

84. Defendants are, therefore, liable to Plaintiff for multiple damages.

**WHEREFORE**, the Plaintiff, Gerard Barsoum, prays that this Honorable Court determine the full amount of damages sustained by him as a result of the wrongful actions of Defendants Kinderhook Industries, LLC, AMN Healthcare Services, Inc., and David Fetterolf, and that it enter judgment in favor of Plaintiff and against said Defendants in accordance with that determination, together with interests, costs, multiple damages and any attorneys' fees to which Plaintiff may be entitled, as well as any other relief that this Court deems necessary and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES PROPERLY SO TRIED**

DATE: June 26, 2023

Respectfully submitted,

**Gerard Barsoum**

By his attorneys,

*/s/ Stephen D. Rosenberg*
Stephen D. Rosenberg, Esq. (BBO #558415)
Caroline M. Fiore, Esq. (BBO #558088)
**Wagner Law Group, P.C.**
125 High Street
Oliver Street Tower, 5th Floor
Boston, Massachusetts 02110
Tel: (617) 357-5200
Fax: (617) 357-5250

Email: srosenberg@wagnerlawgroup.com
Email: cfiore@wagnerlawgroup.com

**Certificate of Service**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 26th of June 2023.

*/s/ Stephen D. Rosenberg*